IN RE APPLICATION OF FORD.

[Cite as *In re Application of Ford,*
110 Ohio St.3d 503, 2006-Ohio-4967.]

(No. 2006-0684—Submitted June 7, 2006—Decided October 11, 2006.)

---

**Per Curiam.**

{¶ 1} The applicant, Bruce Lawrence Ford of Arlington, Ohio, graduated from the University of Toledo College of Law in May 2004. On August 16, 2004, the applicant applied to register as a candidate for admission to the practice of law in Ohio. On October 29, 2004, he applied to take the February 2005 Ohio bar

examination; however, his application was rejected for lack of the character-and-fitness review required by Gov.Bar R. I(11)(C)(1) for bar admission candidates.

{¶ 2} In a final report filed on March 31, 2005, the Hancock County Bar Admissions Committee disapproved respondent's application, citing concerns about his mental health and neglect of financial responsibilities. The applicant appealed. A panel of the Board of Commissioners on Character and Fitness heard the cause on December 1, 2005, and January 20, 2006.

{¶ 3} Evidence before the panel confirmed the history of financial troubles and mental-health concerns that the applicant had disclosed during the bar admission process. The applicant had received Chapter 7 bankruptcy protection in 1987 and again in 1999, and at the time of his character and fitness interview, he owed judgment creditors and others significant sums that were over 90 days past due. The applicant had also been in treatment for years for his medical condition.

{¶ 4} Other evidence established that respondent had earned a master of divinity degree from Yale University in May 1994 and a bachelor of music education degree from the University of Cincinnati College Conservatory of Music in June 1981. The applicant became a deacon in the United Methodist Church in 1994 and is an ordained Methodist pastor. He now serves three small congregations as a part-time minister. He also works part-time with the city prosecutor's office in Toledo. The applicant eventually hopes to develop a ministry called Hope Associates that will provide legal services to victims of family violence and serve the underprivileged, a mission that his church apparently supports.

{¶ 5} The admissions committee disapproved of the applicant's character and fitness to practice law, explaining:

{¶ 6} "[Applicant] has mental health issues which, left untreated, could present serious questions as to whether he would be fit to practice law. [Applicant] currently has the mental health issues under control with medication and counseling[;] however, the Committee has concerns regarding his reaction to the unavoidable stress that would arise from the practice of law.

{¶ 7} " * * *

{¶ 8} "[Applicant] has two (2) prior bankruptcies. He currently is burdened with significant debt. The committee has thoroughly reviewed his financial condition. Although he has retained the services of a debt attorney to assist him, the Committee feels this debt will remain for a significant period of time, and could cause problems for [applicant] if he is granted permission to practice law at this time.

{¶ 9} " * * *

{¶ 10} "[Applicant] was very cordial and cooperative with the Committee's investigation. Unfortunately, the Committee, in good conscience cannot recommend that he be approved at this time to practice law."

{¶ 11} In reviewing the admissions committee report, the panel did not find respondent's medical history to be cause for immediate concern. The panel said in its report that it was satisfied that respondent was appropriately managing his condition through comprehensive medical attention and a support network of friends and colleagues who, along with respondent and his psychiatrist, closely monitor his behavior for irregularities. The applicant's moods have been stable for the last six years, and the psychiatrist who diagnosed respondent's disorder in 1999 testified that if licensed, the applicant could effectively act as an attorney under these circumstances. The psychiatrist was also confident that, with continuing treatment and oversight, respondent could handle the stresses of his ministry and establishing the legal-services program that he wanted to develop.

{¶ 12} Turning to the applicant's financial problems, the panel acknowledged that the applicant's 1999 bankruptcy may have been attributable to his mental-health concerns. The panel also learned that the applicant had had another health problem and an associated decrease in income that year. The applicant admitted, however, that his 1987 bankruptcy resulted from career changes and moves that impeded his ability to make ends meet. One panel member observed that similar career changes and financial irresponsibility—his decision to pursue the ministry and then the law without any realistic way to repay the personal debt he incurred—had perpetuated his financial problems. The panel thus shared the bar association's concern about the applicant's continuing financial irresponsibility.

{¶ 13} During the second day of the hearing, the panel received a detailed account of respondent's finances, including his efforts to make payments toward revolving credit debt and other outstanding obligations, particularly the daunting prospect of repaying his student loans. The panel estimated that as of that time, the applicant owed $136,000. Approximately $117,600 of this amount was attributable to deferred student loans, some of which the applicant disputed. The remaining $18,400 represented other loan debt, including approximately $4,900 in credit card charges toward which the applicant was making small payments.

{¶ 14} During the bar-application process, the applicant engaged a lawyer to help him reduce his debt. Testifying before the panel, the lawyer said that he had been counseling the applicant for nearly one year and has been able to negotiate debt settlements with certain creditors. The applicant had also had some success on his own in negotiating debt settlements and payment plans.

{¶ 15} When the panel members reviewed the applicant's personal budget, however, they found his repayment plans tenuous, given either the unrealistic

amounts of income he anticipated or the unlikely sources from which he expected to earn it. The applicant's part-time work as a pastor and his internship with the prosecutor's office are his most stable source of income for 2006, but neither pays well. As an additional source of income for that year, the applicant anticipated that he would also raise $8,000 from selling golden retriever puppies. The applicant projected another $6,000 in income based on a stipend he hoped to receive in the fourth quarter of 2006 once he passed the bar, received his license to practice law, and began work as the executive director of New Hope Ministries.

{¶ 16} Despite the members' overall concerns about the applicant's financial irresponsibility, however, the panel was encouraged by the applicant's recent efforts to reduce his indebtedness. The panel found that the applicant possessed the requisite character, fitness, and moral qualifications for admission to the Ohio bar and recommended that his application be approved.

{¶ 17} The board agreed that the applicant was appropriately treating and managing the difficulties related to his mental health and also did not consider his medical condition a disqualifying factor under Gov.Bar R. I(11)(D)(3)(e). The board rejected, however, the panel's recommendation as to the disqualifying effect of the applicant's neglect of financial responsibilities. See Gov.Bar R. I(11)(D)(3)(k). The board explained:

{¶ 18} "[Applicant's] plans for supplementing his current income are unproven, if not unrealistic. The Board commends [applicant's] recent serious efforts to reduce expenses and retire debt. However, his current budget is barely in balance, and more importantly, it appears that only recently has [applicant] addressed a long-standing pattern of living beyond his means, and failing to satisfy his financial commitments."

{¶ 19} Finding the applicant's character and fitness wanting, the board recommended that his application to register as a candidate for bar admission be disapproved at that time. The board further recommended that the applicant not be permitted to reapply until February 2007, in part because the applicant will have had two years from the February 2005 exam, for which he had originally applied, to improve his financial situation. The board recommended that the applicant be required, upon reapplication, to demonstrate that he has "sustained a financially-responsible course, addressing existing debt and demonstrating that he can modify his spending, or increase his income, so as to avoid continuing his prior pattern of living beyond his means." The applicant has not objected to the board's findings or recommendation.

{¶ 20} On review, we adopt the findings and recommendation of the board. Under Gov.Bar R. I(11)(D)(1), "[t]he applicant has the burden to prove by clear and convincing evidence that the applicant possesses the requisite character,

fitness, and moral qualifications for admission to the practice of law." The applicant did not meet that burden.

{¶ 21} Financial responsibility is critically important for lawyers. The reservations expressed by the board relating to the applicant's financial condition were justified, and neglect of financial responsibilities weighs against approval of an application for admission. *In re Application of Dickens*, 106 Ohio St.3d 128, 2005-Ohio-4097, 832 N.E.2d 725, ¶ 16. "We expect applicants for admission to the Ohio bar and bar members to scrupulously honor all financial commitments." *In re Application of Manayan*, 102 Ohio St.3d 109, 2004-Ohio-1804, 807 N.E.2d 313, ¶ 14; *In re Application of Mitchell* (1997), 79 Ohio St.3d 153, 679 N.E.2d 1127 (disapproving the application of an applicant who, along with other problems, had had several credit cards canceled for nonpayment).

{¶ 22} The applicant's tendency toward financial irresponsibility makes him a poor risk to entrust with the duties owed clients, the courts, adversaries, and others in the practice of law. By February 2007, he may be able to show that he has abandoned that tendency. His application to register as a candidate for admission to the practice of law in Ohio is therefore disapproved; however, he may reapply pursuant to Gov.Bar R. I(1) in February 2007.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

Steven M. Powell and Bradley S. Warren, for relator.
James D. Caruso, for applicant.