In re Application of Stewart.

[Cite as *In re Application of Stewart,* 112
Ohio St.3d 415, 2006-Ohio-6579.]

(No. 2006–1621—Submitted November 15, 2006—Decided December 20, 2006.)

**Per Curiam.**

{¶ 1} Applicant, William Howard Stewart III of Dayton, Ohio, graduated from Salmon P. Chase College of Law in May 2004. He applied to register as a candidate for admission to the Ohio bar on December 10, 2003. See Gov.Bar R. I(1). On March 25, 2004, he applied to take the July 2004 bar examination, updating his candidacy application as required by Gov.Bar R. I(3).

{¶ 2} In early July 2004, two members of the Dayton Bar Association's Admissions Committee, after interviewing the applicant, expressed concern over the applicant's indebtedness, history of litigiousness, and overly combative nature. The interviewers deferred a decision to the full 20 members of the admissions committee, in effect referring the cause for further review. After much debate, the full committee approved the applicant's character and fitness.

{¶ 3} Pursuant to Gov.Bar R. I(10)(B)(2)(e), which allows sua sponte investigation of an applicant's character and fitness at any time prior to his admission to the bar, the Board of Commissioners on Character and Fitness appointed a panel to review the applicant's qualifications. The panel heard the cause on January 14, 2005, and unanimously recommended against the applicant's immediate approval, recommending instead that he be permitted to reapply to take the bar examination when he was better able to demonstrate his character and fitness to practice law. The board adopted the panel's report and recommendation and also made additional factual findings of its own.

The Applicant's Considerable Indebtedness

{¶ 4} The applicant, who was 47 years old at the time of the panel hearing, has a history of financial irresponsibility. The board was deeply troubled by this and

by his lack of candor about the extent of his indebtedness. The applicant confirmed during the hearing that he had outstanding debts ranging from $160,000 to $170,000, with all but $30,000 of the indebtedness being attributable to student loans. The applicant testified that he had applied for another six-month deferment for repaying the student loans but had not yet received notice of that determination.

{¶ 5} The remaining $30,000 of debt, the applicant explained, was attributable to four credit cards. The applicant reported that he had recently tried to arrange payment plans with two of these creditors and had done so successfully with one, but had not gotten around to making similar arrangements with the two other credit card companies. When the panel inquired as to whether any of his credit card bills were 90 days past due when he filed his bar exam application in March 2004, the applicant replied, "No," just as he had in response to this question on his application. What he meant by this statement and his answer, however, was that he had never allowed three months to pass without making some payment on each card, not that he had consistently kept up his payments even in the minimum amounts. In a marked understatement, the applicant acknowledged that he was a "slow pay" on his revolving credit accounts.

{¶ 6} The applicant, who is now a self-employed painter, explained that he simply does not have the money to pay his obligations. He withdrew his contributions from the Public Employee Retirement System and used the money during law school and while studying for the bar exam, but that money ran out in August 2004. He promised the panel, however, to do better in paying his credit card debts with the $600 per week he was earning as a painter.

{¶ 7} The panel asked the applicant to produce the credit card statements that he had received after he had filed his bar-candidacy application in December 2003. The applicant agreed to present the 13 months' worth of statements for all four cards promptly in order to accommodate review before the board meeting to be held on February 3, 2005. The applicant later contacted the panel chairperson and confessed that some of his credit card payments were, in fact, more than 90 days overdue. At that time, the panel chairperson again asked the applicant to forward the requested records, and the chairperson reminded the applicant immediately before the board meeting to send these reports. The applicant supplemented his application materials on February 13 and March 12, 2005, too late for the board's consideration.

{¶ 8} In addition to his credit card and other debt, the applicant was delinquent during the years 1970 to 1990 in paying his federal, state, and local taxes. The applicant explained his tax liability as being in part the result of his ex-wife's failure to withhold payroll taxes for her family's accounting business. Tax consequences also resulted when the applicant failed to withhold payroll taxes for

his own business as a contractor. The applicant eventually negotiated a settlement of his federal and state tax liability. He claimed that he had resolved all his tax problems except for a deficiency of $1,500 in state taxes and $350 in federal taxes for 2004.

The Applicant's History of Litigiousness

{¶ 9} The applicant's bar application materials further confirmed that since 1976, he has been involved in 62 court cases concerning all manner of disputes. In at least three cases, the applicant claimed unfair labor practices. In at least nine cases, authorities attempted to collect the applicant's delinquent federal, state, or local taxes. Still other actions included 13 traffic citations and several disorderly conduct convictions, as well as a 2003 conviction for menacing, which was later reversed.

{¶ 10} Despite this startling amount of legal activity, the board found that the applicant had never pursued a vexatious claim. Moreover, because at least 11 of the 62 cases were juvenile court proceedings in which the applicant had participated only as a parent, the board did not question the applicant's involvement in those proceedings. The 50 or so other cases were of considerable concern to the board, however, as was the applicant's cavalier attitude toward his litigious record.

{¶ 11} As of the panel hearing date, all but three of the approximately 50 court cases had been resolved. Still pending was a mandamus action to contest the dismissal of the applicant's claims against his former employer, the city of Dayton, after the city allegedly denied him a day of vacation. A related dispute in which the applicant had sued Dayton for abuse of process was also pending. In the third case, the applicant was defending himself against a mortgage foreclosure action.

{¶ 12} Despite this record, particularly the misdemeanor charges, the applicant disputed that he had shown any pattern of disregarding the law, a factor that weighs against an applicant's approval under Gov.Bar R. I(11)(D)(3)(f). The applicant insisted that "all kinds of people" had a record of minor misdemeanors similar to his and that he did not "see it as a serious problem." To enter the practice of law in Ohio, however, one must be able "to conduct oneself with respect for and in accordance with the law." Supreme Court of Ohio, Definitions of Essential Eligibility Requirements for the Practice of Law, Requirement No. 5, http://www.sconet.state.oh.us./Admissions/application/03req/default.asp ("Essential Eligibility Requirements").

The Applicant's Combativeness

{¶ 13} Also of concern was the applicant's inability to conduct himself without regularly resorting to behavior that the board referred to as pugnacious. Mem-

bers of the bar admissions committee described the applicant as an "arrogant, pompous * * * know it all." The applicant admitted his characteristic hot temper, but defended it as a mere verbal manifestation that never resulted in a physical altercation:

{¶ 14} "I think I can handle myself, conduct myself according to a code, a code of honor, and a code of doing right to other people, and if they don't do me right, I'm like John Wayne, you're going to hear about it, and I'm going to get up in your face but, like I said, I don't beat anybody up."

{¶ 15} Acknowledging that a pleasant personality is not a prerequisite to the practice of law in Ohio, the board nevertheless noted that an applicant must have the ability to conduct himself professionally and in a manner that engenders respect for the law and the profession. See Essential Eligibility Requirements, Requirement No. 10. Throughout his testimony, however, the applicant was confrontational without provocation and saw nothing unprofessional about his remarks. He also rejected the suggestion that he might benefit from anger-management therapy, tossing off the board's concern as "paternalistic." The applicant confessed that he had almost seen a psychiatrist in 2004 but had canceled the appointment because he considered it an empty gesture. The applicant was confident that he would be able to practice law in accordance with professional and ethical standards because he intended to secure a transactional legal job that did not require him to interact with clients.

{¶ 16} In conclusion, the board agreed with the panel and bar admission committee that the applicant's poor temperament and litigious history were not by themselves sufficient to disapprove of his character and fitness. Based on the combination of these factors, the applicant's indebtedness, and his failure to candidly discuss or document his financial irresponsibility, however, the board found that he had not proved his character and fitness to practice law by clear and convincing evidence. Because the applicant had failed to sustain his burden of proof, the board recommended disapproval of his application to take the Ohio bar exam and, consistent with the panel's report, that he be permitted to reapply to take the bar examination at a later time. The applicant has not objected to this recommendation.

{¶ 17} On review, we adopt the findings and recommendation of the board. Under Gov.Bar R. I(11)(D)(1), the applicant has the burden to prove by clear and convincing evidence that he possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio. The applicant did not meet that burden.

{¶ 18} An applicant's tendency toward financial irresponsibility makes him a poor risk to entrust with the duties owed clients, the courts, adversaries, and others in the practice of law. *In re Application of Ford,* 110 Ohio St.3d 503,

2006-Ohio-4967, 854 N.E.2d 501. The neglect of financial responsibilities weighs against the approval of an application for admission and to take the bar exam. Gov.Bar R. I(11)(D)(3)(k); *In re Application of Dickens,* 106 Ohio St.3d 128, 2005-Ohio-4097, 832 N.E.2d 725, ¶ 16. Thus, "[w]e expect applicants for admission to the Ohio bar and bar members to scrupulously honor all financial commitments." *In re Application of Manayan,* 102 Ohio St.3d 109, 2004-Ohio-1804, 807 N.E.2d 313, ¶ 14; see, also, *In re Application of Mitchell* (1997), 79 Ohio St.3d 153, 679 N.E.2d 1127 (disapproving the application of an applicant who, along with other problems, had had several credit cards canceled for nonpayment).

{¶ 19} Financial irresponsibility alone is enough to disapprove a bar candidacy or bar exam application, as is an applicant's failure to provide requested information. See Gov.Bar R. I(12)(C)(6). The reservations expressed by the board about the applicant's financial condition are justified. The application to take the Ohio bar examination is therefore disapproved at this time. The applicant may reapply when he is able to demonstrate that he possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jenks, Pyper & Oxley Co., L.P.A., and P. Christian Nordstrom; and Bruce Martino, for relator.

William Howard Stewart III, pro se.